| | |
|---|---|
| District Court, Pitkin County, Colorado<br>506 E. Main, Suite 300<br>Aspen, CO 81611<br><br>Plaintiff: Donald Stalker<br><br>v.<br><br>Defendant: Aspen School District | DATE FILED: April 8, 2019 4:47 PM<br>FILING ID: 86FAA694C01C1<br>CASE NUMBER: 2019CV30033<br><br><br>▲ COURT USE ONLY ▲ |
| Ted Hess & Associates, LLC<br>Theodore G. Hess, 31594<br>Kristin L. Bohman, 47880<br>110 8th Street<br>Glenwood Springs, CO 81601<br>Telephone: (970) 945-5300<br>Facsimile: (970) 945-2898<br>Email: ted@tedhess.com | Case Number:<br><br><br><br><br>Division          Courtroom |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,<br>COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT<br>AND JURY DEMAND** | |

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☑ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

   > By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

   **Or**

**EXHIBIT A**

☐   Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.   ☑   This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:** <u>April 8, 2019</u>                    <u>*/s/ Theodore G. Hess*</u>
Theodore G. Hess, 31594
Ted Hess & Associates, LLC
110 8th Street
Glenwood Springs, CO 81601
Telephone: (970) 945-5300
Facsimile: (970) 945-2898
Email: ted@tedhess.com

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

| | |
|---|---|
| District Court, Pitkin County, Colorado<br>506 E. Main, Suite 300<br>Aspen, CO 81611<br><br><br>Plaintiff: Donald Stalker,<br><br>v.<br><br>Defendant: Aspen School District | DATE FILED: April 8, 2019 4:47 PM<br>FILING ID: 86FAA694C01C1<br>CASE NUMBER: 2019CV30033<br><br><br>▲ **COURT USE ONLY** ▲ |
| Ted Hess & Associates, LLC<br>Theodore G. Hess, 31594<br>Kristin L. Bohman, 47880<br>110 8th Street<br>Glenwood Springs, CO 81601<br>Telephone: (970) 945-5300<br>Facsimile: (970) 945-2898<br>Email: ted@tedhess.com | Case Number:<br><br><br><br>Division          Courtroom: |

**COMPLAINT AND JURY DEMAND**

Plaintiff Donald Stalker, through undersigned Counsel, for his Complaint against

Defendant, states, as follows:

## NATURE OF ACTION

1. This is an employment discrimination action pursuant to the Colorado Anti-

   Discrimination Act (CADA), Colo. Rev. Stat. §§ 24-34-401, *et. seq.* and the Family and

   Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, *et. seq.*

## PARTIES

2. Plaintiff Donald Stalker ("Mr. Stalker") is a natural person who resides in Eagle County,

   Colorado.

3. Defendant Aspen School District ("Defendant" or the "School District") is a political

   subdivision of the State of Colorado and maintains its principal place of business at 235

   High School Road, Aspen, Colorado 81611.

## JURISDICTION AND VENUE

4.  This Court has subject-matter jurisdiction over Mr. Stalker's CADA claim as it arises under the laws of the State of Colorado.

5.  This Court has subject-matter jurisdiction over Mr. Stalker's FMLA claim under 29 U.S.C. § 2617(a)(2).

6.  This Court has personal jurisdiction over the parties because Defendant maintains its principal place of business and Mr. Stalker worked in Pitkin County, Colorado.

7.  Venue in this district is proper because Defendant does business in this judicial district, and the events giving rise to this action occurred in this judicial district.

## ADMINISTRATIVE PROCEDURES AND EXHAUSTION OF REMEDIES

8.  Mr. Stalker filed a timely Charge of Discrimination with the Colorado Civil Rights Division on or about May 14, 2018, which was assigned a charge number of FE2018910065.

9.  Mr. Stalker was mailed a "Notice of Right to Sue" letter on January 8, 2019 by the Colorado Civil Rights Division, granting him the right to file this suit.

10. This complaint is filed within 90 days of Mr. Stalker's receipt of his right to sue letter from the Colorado Civil Rights Division.

11. Mr. Stalker has satisfied all other administrative and procedural prerequisites to filing this complaint.

## FACTS

12. Defendant's Human Resources Director during the events described in this complaint was Elizabeth Hodges ("Ms. Hodges").

13. As the Defendant's Human Resources Director, Ms. Hodges had the power to make personnel decisions regarding Mr. Stalker's employment.

14. Defendant's Principal for Aspen High School during the events described in this complaint was Tharyn Mulberry ("Principal Mulberry").

15. As Mr. Stalker's immediate supervisor, Principal Mulberry had the power to make personnel decisions regarding Mr. Stalker's employment.

16. Defendant's Director of Transportation and Facilities during the events described in this complaint was Gary Vavra ("Mr. Vavra").

17. As one of Mr. Stalker's supervisors, Mr. Vavra had the power to make personnel decisions regarding Mr. Stalker's employment.

18. Defendant is a "covered employer" within the meaning of 29 U.S.C. § 2611(4) and 29 C.F.R. § 825.104(a).

19. Defendant is an "employer" within the meaning of Colo. Rev. Stat. § 24-34-401(3).

20. Mr. Stalker began his employment with Defendant on October 14, 2014 as a maintenance technician for Aspen Elementary School.

21. In 2017, Mr. Stalker—still a maintenance technician—transferred to Aspen High School.

22. At all relevant times herein, Mr. Stalker was an "employee" of Defendant within the meaning of Colo. Rev. Stat. § 24-34-401(2) and "eligible employee" within the meaning of 29 C.F.R. § 825.110.

23. As a maintenance technician for Defendant, Mr. Stalker was responsible for inspection, servicing, and repair of the buildings, grounds, equipment, and furnishings and ensuring equipment runs smoothly, building systems operate efficiently, and the physical condition of the facilities does not deteriorate.

24. In addition to these duties, Mr. Stalker was also responsible for time-intensive bids for new projects assigned to him by Mr. Vavra, which often took time away from his primary duties.

25. In his position as a maintenance technician, Mr. Stalker was often required to perform tasks such as bending, climbing, crouching, kneeling, reaching, standing, walking, lifting, and carrying.

26. Marlene Stalker ("Mrs. Stalker") is Mr. Stalker's wife.

27. At all relevant times, Mrs. Stalker was employed by Defendant as a District Office Administrative Assistant.

28. In her position as a District Office Administrative Assistant, Mrs. Stalker had daily contact with Ms. Hodges.

29. On August 21, 2017, Mr. Stalker contacted Ms. Hodges and informed her that he would be out sick.

30. On August 22, 2017, Mr. Stalker went to see his primary care physician, where he collapsed in the waiting room.

31. That day, Mr. Stalker was transferred to the emergency department, where he was later diagnosed with enteropathogenic E. coli.

32. Mrs. Stalker notified Defendant of her husband's diagnosis and that Mr. Stalker would be out sick through the rest of the week.

33. During his illness, information regarding Mr. Stalker's health status was communicated to Defendant via Mrs. Stalker because of Mr. Stalker's incapacity.

34. Defendant advised Mr. Stalker that he would have to provide a note from a health care provider if he would be out of work for more than three days.

35. Mrs. Stalker provided Defendant a doctor's note excusing Mr. Stalker from work until August 28, 2017, "or until illness over."

36. On August 28, 2017, Mrs. Stalker provided Defendant a note from Mr. Stalker's primary health care physician, Dr. Kimball Spence, stating that Mr. Stalker had a serious illness, that he would need to remain off work through August 29, 2017, and that he may return to work on August 30 or 31, 2017, "depending on clinical course."

37. On September 5, 2017, Mr. Stalker returned to work on a reduced-leave schedule working half-days on September 5, 6, 7, 8, 11, and 12, 2017.

38. On September 12, 2017, Mr. Stalker visited his primary care physician for a follow-up examination.

39. Due to his continued impairment, Mr. Stalker was given a doctor's note to take off work until September 22, 2017.

40. On September 13, 2017, Mr. Stalker submitted a Medical/FMLA Leave Request Form to Defendant.

41. However, Mr. Stalker did not receive a Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) at any time from Defendant, as required by 29 C.F.R. § 825.300(b)(1)-(e).

42. On September 18, 2017, Mr. Stalker provided Defendant a doctor's note, stating he could return to work on October 2, 2017.

43. A week later, on September 25, 2017, Mr. Stalker attempted to return to work once again.

44. He worked half-days on September 25 and 26, 2017 but was unable to continue due to his impaired condition.

45. On September 27, 2017, Mr. Stalker provided Defendant a doctor's note, stating, "his illness is more prolonged than expected" and he could return to work on or after October 9, 2017.

46. On October 5, 2017, Mr. Stalker provided Defendant a doctor's note stating that he could return to work on October 25, 2017.

47. That same day—October 5, 2017—Mr. Stalker submitted a Sick Leave Bank Request Form for paid coverage through October 24, 2017.

48. On October 10, 2017, Mr. Stalker received a Sick Leave Bank Notification of Action from Defendant approving 20 days from the Sick Leave Bank.

49. On October 23, 2017, Mr. Stalker provided Defendant a doctor's note stating he could return to work on November 8, 2017.

50. On November 6, 2017, Mr. Stalker received a doctor's note stating he may return to work November 13, 2017, with limitations, including working half-days (4 hours) 3 days per week through November 27, 2017, at which point he may work half-days (4 hours) 5 days per week.

51. Mr. Stalker provided this note to Defendant on November 8, 2017.

52. Mr. Stalker returned to work on November 13, 2017. He worked half-days on November 13, 15, and 17, 2017.

53. The following week was Thanksgiving Break for the School District, during which employees were only required to work 2 out of 5 full days.

54. During Thanksgiving Break, Mr. Stalker worked half-days on November 20, 21, 24, and 25, 2017.

55. The following week, at which point Mr. Stalker had been cleared to work half-days five days per week, Mr. Stalker worked half-days on November 26, 27, 28, 29, and 30, 2017.

56. Mr. Stalker informed Principal Mulberry that his doctor had cleared him for, and that he intended to, return to full-time work starting on Monday, December 4, 2017.

57. On December 1, 2017, Mr. Stalker clocked in for work.

58. Later that morning, his employment was terminated by Defendant.

59. By terminating Mr. Stalker, Defendant denied to reinstate him to his position or an equivalent position

60. Three administrators were present during Mr. Stalker's termination: Ms. Hodges, Principal Mulberry, and Mr. Vavra.

61. Mr. Stalker had been in daily communication with Principal Mulberry about his health status and projected return to work full-time on December 4, 2017.

62. When Mr. Stalker stated this to Ms. Hodges, she replied, "It doesn't matter," or words to that effect.

63. Upon his termination, Defendant's agents informed Mr. Stalker that they needed someone in the building to work full-time.

64. Prior to Mr. Stalker's discharge, the Defendant never informed him that he would not be reinstated to his prior position or an equivalent position, nor was he given an opportunity by Defendant to return to work sooner.

65. The actions of Ms. Hodges, Principal Mulberry, and Mr. Vavra to bring about the termination of Mr. Stalker's employment were done in the line and scope of their employment with Defendant and are thus the actions of the Defendant.

## CAUSES OF ACTION

## Count One:

## Violation of the Colorado Anti-Discrimination Act – Unlawful Discharge

66. The preceding paragraphs are incorporated into Count One as if fully set forth herein.

67. Mr. Stalker's E. coli infection, coupled with his subsequent sepsis (lingering after-effects), was a physical impairment under the CADA.

68. Mr. Stalker's E. coli infection and subsequent sepsis substantially limited his ability to carry out the major life activities of caring for oneself, walking, standing, lifting, carrying, pushing, pulling, climbing, and working.

69. Mr. Stalker's illness also impaired him from the major life activity of major bodily functions due to his impaired hemic system from the sepsis that resulted from his E. coli infection.

70. Following his infection in August 2017, Mr. Stalker (a) had a physical impairment that substantially limited one or more major life activities; (b) had a record of such impairment; and (c) was regarded by Defendant as having such impairment.

71. Mr. Stalker was disabled within the meaning of the CADA.

72. Although disabled within the meaning of the CADA, Mr. Stalker was a qualified individual able to perform the essential functions of his job as a maintenance technician with reasonable accommodation.

73. Defendant intentionally discriminated against Mr. Stalker in violation of the CADA by discharging him, in that it discharged him because it regarded him as disabled and because he had a record of a disability.

8

74. As a direct result of Defendant's discriminatory conduct, Mr. Stalker has lost wages and other benefits and has been unable to find a comparable job; he has suffered emotional distress, humiliation, embarrassment, depression, and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at trial.

## Count Two:

## Violation of the Family and Medical Leave Act – Interference

75. The preceding paragraphs are incorporated into Count Two as if fully set forth herein.

76. Mr. Stalker had an E. coli infection and subsequent sepsis.

77. Mr. Stalker's E. coli infection and subsequent sepsis required continuing treatment by a health care provider.

78. Mr. Stalker's E. coli infection and subsequent sepsis was a serious health condition that entitled him to Family and Medical Leave.

79. The Defendant is an employer as defined by the FMLA.

80. On September 13, 2017, Mr. Stalker submitted a Medical/FMLA Leave Request Form after attempting to return to work but being unable to continue due to his ongoing impairment.

81. This form requested FMLA beginning August 21, 2017, the first day Mr. Stalker missed work due to his illness.

82. Mr. Stalker's FMLA request entitled him to 480 hours of covered medical leave to be taken intermittently as needed, calculated according to 29 C.F.R. § 825.205(b).

83. Per the approval by his doctor, Mr. Stalker resumed work on November 13, 2017, with limitations, working 3 half-days per week until November 27, 2017, at which point he began working 5 half-days per week.

84. Mr. Stalker was cleared to resume work full-time on December 4, 2017.

85. On December 1, 2017, Mr. Stalker was terminated from his position as a maintenance technician.

86. Mr. Stalker was entitled to be reinstated to his position on December 1, 2018, as required by 29 C.F.R. § 825.214.

87. Defendant unlawfully interfered with Mr. Stalker's right to be reinstated under the FMLA.

88. Because of Defendant's unlawful interference with Mr. Stalker's right to be reinstated under the FMLA, Mr. Stalker has lost wages and other benefits and has been unable to find a comparable job; and he has suffered other pecuniary losses, all of which will be proven at trial.

## Count Three:

## Violation of the Family and Medical Leave Act – Retaliation

1. The preceding paragraphs are incorporated into Count Three as if fully set forth herein.

2. By requesting and talking FMLA leave, Mr. Stalker engaged in statutorily-protected conduct.

3. Mr. Stalker was not reinstated to his position or an equivalent position upon his return from leave.

4. Instead, Defendant terminated Mr. Stalkers employment following his return to work on a half-day basis and just days before Defendant knew Mr. Stalker was to return to work full-time.

5. A causal connection exists between Mr. Stalker's taking of FMLA leave and his termination by Defendants.

6. Because of Defendant's unlawful retaliation with Mr. Stalker's right to talk leave under the FLMA and to be reinstated under the FMLA, Mr. Stalker has lost wages and other benefits and has been unable to find a comparable job; and he has suffered other pecuniary losses, all of which will be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Donald Stalker requests that this Court enter judgment in his favor and grant him relief allowed by law, including, but not limited to:

(a)  back pay;

(b)  reinstatement or front pay;

(c)  restored benefits;

(d)  compensatory damages;

(e)  attorney fees;

(f)  expert witness fees;

(g)  costs;

(h)  pre- and post-judgment interest; and

(i)  any further relief that is just and equitable under the circumstances.

**JURY DEMAND**

Plaintiff Donald Stalker demands a trial by jury on all issues.

DATED this 8th day of April, 2019.

Respectfully submitted,

Ted Hess & Associates, LLC

*/s/ Theodore G. Hess*
Theodore G. Hess, 31594
110 8th Street
Glenwood Springs, CO 81601
Telephone: (970) 945-5300
Facsimile: (970) 945-2898
Email: ted@tedhess.com
*Attorney for Plaintiff*

| District Court, Pitkin County, Colorado<br>506 E. Main, Suite 300<br>Aspen, CO 81611 | |
|---|---|
| | DATE FILED: April 8, 2019 4:47 PM<br>FILING ID: 86FAA694C01C1<br>CASE NUMBER: 2019CV30033 |
| Plaintiff: Donald Stalker,<br><br>v.<br><br>Defendant: Aspen School District | ▲ **COURT USE ONLY** ▲ |
| | Case Number:<br><br>Division:          Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: <u>Aspen School District</u>**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: April 8, 2019

*/s/ Theodore G. Hess*
Theodore G. Hess, 31594
Ted Hess & Associates, LLC
110 8th Street
Glenwood Springs, CO 81601
Telephone: (970) 945-5300
Facsimile: (970) 945-2898
Email: ted@tedhess.com
*Attorneys for Plaintiff*

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this

time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| DISTRICT COURT, PITKIN COUNTY, COLORADO<br>506 E. Main Street, Suite 300<br>Aspen, CO 81611<br>(970) 925-7635 | |
|---|---|
| | DATE FILED: April 9, 2019<br>CASE NUMBER: 2019CV30033 |
| Plaintiff(s):  DONALD STALKER<br>v<br>Defendant(s): ASPEN SCHOOL DISTRICT | |
| | Case No.:  2019CV30033<br><br>Division 1 |

## DELAY REDUCTION ORDER AND ORDER TO SET CASE MANAGEMENT CONFERENCE IN CIVIL CASES ASSIGNED TO JUDGES BOYD, LYNCH, NEILEY, NORRDIN, AND SELDIN

1.  All parties to civil cases assigned to Judges James B. Boyd, Denise K. Lynch, John F. Neiley, Anne K. Norrdin, and Christopher G. Seldin shall comply with this Order.

2.  Deadlines that must be met are:  (a) Returns of Service on all defendants shall be filed within 63 days after the date of the filing of the complaint or, alternatively, if that is not done, plaintiff shall file a status report and explain the difficulties in accomplishing service and request an extension of time to complete service; (b) Application for default judgment shall be filed within 30 days after default has occurred; and (c) Within 42 days after the case is at issue, the responsible attorney or, if both parties are not represented by an attorney, the plaintiff, shall notice a case management setting conference with the division clerk for the judge to whom the case is assigned: Vicky Goddard for Judge Boyd (970-928-3091), Nancy Risner for Judge Lynch (970-928-3093), Maria Vergara Postay for Judge Seldin (970) 925-7635, ext. 3, Kirsten Stewart (970-928-3095) for Judge Norrdin, and Lisa Stoeber (970) 928-3097 for Judge Neiley).  The Case Management Conference shall be set for a time after the parties Proposed Case Management Order is filed. A Case Management Conference is required even in C.R.C.P. 16.1 cases.  **Attorneys may request a Word version of the Proposed Case Management Order be emailed to them by contacting the respective Judge's Clerk.**

3.  The court will consider extending these time periods upon a motion showing good cause.
P
Proposed Case Management Order which shall comply with amended C.R.C. P 16 (b)(1) through (17) and the attached Modified Civil Case Management Order. The Case Management Conference and other conferences will be by telephone only and NOT in person unless specifically ordered by the court.  The trial schedule will not be set until completion of discovery and mediation or other alternative dispute resolution.

5.   Plaintiff shall mail a copy of this order to all parties who enter an appearance and who do NOT file their appearance electronically.   Any party who files an appearance by E-Filing, shall take notice of this Order.

Dated:  APRIL 09, 2019             CLERK OF COURT
                                    */s/ JONNA GOLDSTONE*

| | |
|---|---|
| DISTRICT COURT, PITKIN COUNTY, COLORADO<br>506 E. Main Street, Suite 300<br>Aspen, CO 81611<br>(970) 925-7635<br><br>Plaintiff(s):<br>v.<br><br>Defendant(s): | ▲COURT USE ONLY▲ |
| PITKIN COMBINED COURTS<br>Phone Number:  (970) 925-7635<br>Fax Number:    (970) 925-6349 | Case No.:   CV<br><br>Division: |

| FORM CIVIL CASE MANAGEMENT ORDER |
|---|

The parties shall use this Form Case Management Order when preparing the proposed Case Management Order to be submitted to the court.

Pursuant to C.R.C.P. 16(b), the parties will discuss each item below. If they agree, the agreement should be stated. If they cannot agree, each party should state their position briefly. If an item does not apply, it should be identified as not applicable.

This form shall be submitted to the court in editable format. When approved by the court, it shall constitute the Case Management Order for this case unless modified by the court upon a showing of good cause.

This form must be filed with the court no later than 42 days after the case is at issue and at least 7 days before the date of the case management conference. The parties will comply with the Case Management Order entered by the court

**Trial to the Court or Jury will not be scheduled until completion of all discovery except for expert depositions, and completion of mandatory mediation.**

The case management conference is set for _____ ___, 20_____ at __:__ .m.

**1.** The "at issue date" is: _____.

**2.** Responsible attorney's name, address, phone number and email address:
_____

**3.** The lead counsel for each party, _____,
and any party not represented by counsel, _____,
met and conferred in person or by telephone concerning this Proposed Order and each of the issues listed in Rule 16(b)(3)(A) through (E) on _____ ___, 20 ____.

**4.** Brief description of the case and identification of the issues to be tried (not more than one page, double-spaced, for each side): _____

**5.** The following motions have been filed and are unresolved:

_____

**6.** Brief assessment of each party's position on the application of the proportionality factors, including those listed in C.R.C.P. 26(b)(1): _____

**7.** The lead counsel for each party, _____,
and any party not represented by counsel, _____,
met and conferred concerning possible settlement. The prospects for settlement are:

_____

**8.** Deadlines for:
    a.  Amending or supplementing pleadings: (Not more than 105 days (15 weeks) from at issue                                          date.)

    _____

    b.  Joinder of additional parties: (Not more than 105 days (15) weeks from at issue date.)

    _____

    c.  Identifying non-parties at fault:_____

**9.** Dates of initial disclosures: _____
    Objections, if any, about their adequacy: _____

**10.** If full disclosure of information under C.R.C.P. 26(a)(1)(C) was not made because of a party's inability to provide it, provide a brief statement of reasons for that party's inability and the expected timing of full disclosures _____, and completion of discovery on damages: _____

**11.** Proposed limitations on and modifications to the scope and types of discovery, consistent with the proportionality factors in C.R.C.P. 26(b)(1):_____

_Number of depositions per party (C.R.C.P. 26(b)(2)(A) limit 1 of adverse party + 2 others + experts per C.R.C.P. 26(b)(4)(A)):_ _____

_Number of interrogatories per party (C.R.C.P. 26(b)(2)(B) limit of 30):_ _____

_Number of requests for production of documents per party (C.R.C.P. 26(b)(2)(D) limit of 20):_

_____

_Number of requests for admission per party (C.R.C.P. 26(b)(2)(E) limit of 20):_ _____

_Any physical or mental examination per C.R.C.P. 35:_ _____

_Any limitations on awardable costs:_ _____

_State the justifications for any modifications in the foregoing C.R.C.P. 26(b)(2) limitations:_

_____

**12.** Number of experts, subjects for anticipated expert testimony, and whether experts will be under C.R.C.P. 26(a)(2)(B)(I) or (B)(II). The Court will allow a deviation from the expert disclosure deadlines set forth in C.R.C.P 26(2)(C) for good cause:

_____

If more than one expert in any subject per side is anticipated, state the reasons why such expert is appropriate consistent with proportionality factors in C.R.C.P. 26(b)(1) and any differences among the positions of multiple parties on the same side:

_____

**13.** Proposed deadlines for expert witness disclosure if other than those in C.R.C.P. 26(a)(2):

    a. production of expert reports:

        i. Plaintiff/claimant: _____

        ii. Defendant/opposing party: _____

    b. production of rebuttal expert reports: _____

    c. production of expert witness files: _____

State the reasons for any different dates from those in C.R.C.P. 26(a)(2)(C): _____

_____

**14.** Discovery Deadline: All discovery, except for expert depositions, shall be completed by _____. Requests to supplement discovery after this deadline must be made by written motion. Expert depositions must be completed no later than 45 days before trial unless *the parties stipulate to, or the court approves, a later deadline.*

**15.** Discovery Disputes and Rule 37 Motions: Prior to filing any Rule 37 Motion or other motions relating to discovery disputes, the parties will confer in good faith to attempt to resolve the dispute. If those attempts are not successful, the parties will contact the court's clerk to set the matter for a ½ hour telephone conference with the court to address the dispute. At least three business days prior to the telephone conference the parties will each file a brief summary, not to exceed three pages in length (excluding the caption and certificate of service), describing the specific issues in controversy and citing any applicable case law or other authority. At the telephone conference the court and the attorneys will attempt to resolve the dispute. If the dispute is not resolved at that time, the parties, with leave of the court, may then file formal Motions and Responses under Rule 37.

**16.** Electronically Stored Information: The parties (do)(do not) anticipate needing to discover a significant amount of electronically stored information. The following is a brief report concerning their agreements or positions on search terms to be used, if any, and relating to the production, continued preservation, and restoration of electronically stored information, *including the form in which it is to be produced and an estimate of the attendant costs.*

_____

**17.** Mediation: The court will not set a trial date until all discovery, except for expert depositions, and mediation is completed unless the parties can show good cause for setting a trial without mediation. Pursuant to Rule 16(b)(7) mediation or other ADR will be completed by:_____.

**18.** Written Motions: Whenever necessary or appropriate, the parties may submit motions that include citations to specific, applicable law. However, prior to engaging in such practice, the parties must confer per C.R.C.P. 121 § 1-15-(8). The court will not consider any motion unless there is a certificate of conferral cited in the motion or a valid reason stating why conferral did not occur. Page limits on motions are as set forth in C.R.C.P. 121 § 1-15(1)(a), and must comply with C.R.C.P 10 as amended effective April 1, 2016. Requests to exceed the page limit must be made by separate motion. If exhibits are attached to any motion, the exhibits must be separately uploaded into the e-filing system and separately designated by exhibit number or letter as well as a brief description of the exhibit so it can be quickly accessed by the court. For example "Exhibit B – Affidavit of John Doe" is acceptable. Exhibits that are merely described by number or letter, without more, will be rejected.

**19.** C.R.C.P. 16.1 Cases: A Notice to Elect Exclusion From C.R.C.P. 16.1 must be filed in compliance with C.R.C.P. 16.1(d) or, alternatively, the exclusion may be stated in the Complaint or the first responsive pleading. Pursuant to C.R.C.P. 16.1(j), the court still requires a case management conference in C.R.C.P. 16.1 cases although a form Case Management Order is not required. The Case Management Conference must be set promptly after the parties have completed their initial disclosures pursuant to C.R.C.P. 16.1(k)(1). The purpose of the case management conference is to confirm compliance with the initial disclosure requirements, address any pending issues, and to set a deadline for the completion of mediation. A trial date will not be set in any C.R.C.P. 16.1 case until the parties have completed mediation and completed their required initial disclosures. When mediation is completed, the parties may contact the court for a trial setting conference pursuant to paragraph 21 below. Once a trial date is established, the deadlines for additional discovery under C.R.C.P. 16.1(k)(2) – (8) will apply.

**20.** Settlement: The court is to be immediately notified if the case settles.

**21.** Trial Setting Conference: If mediation is unsuccessful, plaintiff's counsel shall issue a Notice to Set Trial Setting Conference at which time the court will set trial dates and trial preparation deadlines. The court requires written confirmation from the plaintiff or responsible attorney that mediation was conducted before a trial date will be given.

**22.** Other Matters:_____.

DATED this _____ day of _____, 20_____.


_____        _____
Signature                                Signature

_____        _____
Attorney for Plaintiff                   Attorney for Defendant


IT IS HEREBY ORDERED that the foregoing, including any modifications made by the court, is and shall be the Case Management Order in this case.

Dated this ____ day of _____, 20__.

BY THE COURT:

_____
District Court Judge